[611 NYS2d 506]

In the Matter of the Liquidation of UNION INDEMNITY INSURANCE COMPANY OF NEW YORK.

MICHIGAN NATIONAL BANK-OAKLAND, Appellant, v AMERICAN CENTENNIAL INSURANCE COMPANY et al., Respondents, et al., Defendants.

SALVATORE R. CURIALE, Superintendent of Insurance, as Liquidator of Union Indemnity Insurance Company of New York, Third-Party Plaintiff-Intervenor-Respondent-Appellant, v AMERICAN CENTENNIAL INSURANCE COMPANY et al., Third-Party Defendants-Respondents, et al., Third-Party Defendants.

First Department, May 3, 1994

**APPEARANCES OF COUNSEL**

*Leo T. Crowley* of counsel *(Robert S. De Leon* with him on the brief; *Winthrop, Stimson, Putnam & Roberts,* attorneys), for appellant.

*Lawrence I. Brandes* of counsel *(Nancy K. Eisner* and *William M. Popalisky* with him on the brief; *Rosenman & Colin,* attorneys), for American Centennial and others, respondents/third-party defendants-respondents.

*LeBoeuf, Lamb, Leiby & MacRae* for Kansa, respondent/third-party defendant-respondent.

*Steven E. Lewis* of counsel *(David Klein* with him on the brief; *Dunnington, Bartholow & Miller,* attorneys), for Aneco, respondent/third-party defendant-respondent.

*Peter J. Biging* of counsel *(Michael D. Brown* with him on the brief; *Ohrenstein & Brown,* attorneys), for Philan and Benodet, respondents/third-party defendants-respondents.

*Larry P. Schiffer* of counsel *(Tracy A. Stein* and *Evan L. Smoak* with him on the brief; *Werner & Kennedy,* attorneys), for Hannover, respondent/third-party defendant-respondent.

*R. Mark Keenan* and *Anna S. Chacko* of counsel *(Randall E. Cooper* with them on the brief; *Stephen Doody,* and *Anderson Kill Olick & Oshinsky, P. C.,* attorneys), for third-party plaintiff-intervenor-respondent-appellant.

*W. Henry Jernigan, Jr.,* of counsel *(Jacqueline Syers Duncan* with him on the brief; *Jackson & Kelly,* attorneys), for Commissioner of Insurance for Commonwealth of Kentucky, *amicus curiae.*

### OPINION OF THE COURT

KUPFERMAN, J.

Union Indemnity Insurance Company of New York (Union Indemnity), a subsidiary of Frank B. Hall & Co., Inc. (Hall), was placed into liquidation by order of the Supreme Court, New York County (Ira Gammerman, J.), entered July 16, 1985, based in part upon the finding that it was insolvent, its debts exceeding its assets on March 25, 1985 by $138,501,581.

On September 20, 1985, plaintiff Michigan National Bank-Oakland (Michigan), the beneficiary of a $2 million surety bond issued to Ginso Investment Corp. by Union Indemnity, brought this action on the bond directly against the reinsurers (defendants-respondents American Centennial Insurance Company et al.) of Union Indemnity's obligation, upon Union Indemnity's failure to make payment. Thereafter, the Superintendent of Insurance, as Liquidator, intervened in the action, alleging that the reinsurance proceeds are assets of the estate of the insolvent (Union Indemnity) which, in order to be equally distributed to all policyholders, should be paid to the Liquidator and not to Michigan. The reinsurers then counterclaimed that their reinsurance treaties had been procured by fraud in that (1) Hall operated Union Indemnity for improper purposes and (2) Union Indemnity failed to disclose its insolvency in its annual reports.

In a separate action, *Corcoran v Hall & Co.* (NY County index No. 5273/87 [the Hall action]), the Liquidator brought an action against Union Indemnity's parent company, its affiliates, Hall and Union Indemnity's officers and directors, and Hall's outside auditors (collectively, the Hall defendants) for, *inter alia,* mismanagement, failure to disclose Union Indemnity's insolvency, breach of fiduciary duties, violations of the Insurance Law, and malpractice. Certain creditors of the insolvent insurer's estate (including the reinsurer American Centennial) then filed similar complaints against the various Hall defendants.

The Hall defendants then moved to dismiss the Hall action for failure by the Liquidator to plead fraud with specificity and for lack of standing, claiming that the Liquidator's complaint alleged injury to Union Indemnity's creditors only, and not to Union Indemnity itself. The competing creditor actions were consolidated with the Hall action. The Liquidator then cross-moved to shift the burden of proof to the Hall defendants based upon, *inter alia,* the disarray of Union Indemnity's books and records.

In opposition to the Hall defendants' dismissal motions, the Liquidator submitted the affidavits of two of its outside counsel along with supporting documentation, including ones drafted by Union Indemnity officers and directors, to the effect that the Liquidator's complaint clearly alleged Hall's active participation in a scheme to defraud, which allegations were based in part on matters uncovered by the Liquidator's ongoing investigation into Union Indemnity's affairs, which was being severely hampered by the disorganized condition of Union Indemnity's books.

The liquidation court (Gammerman, J.) denied the motions to dismiss in the Hall action, and denied the Liquidator's cross motion to shift the burden of proof on various issues until completion of discovery. Upon appeal, this Court affirmed (149 AD2d 165). Thereafter, in June 1989, the Liquidator and all of the Hall defendants settled, subject to a still-pending court approval.

After Justice Gammerman's decision, but prior to the affirmance or the settlement of the Hall action, the reinsurers in the instant action moved for summary judgment, seeking to rescind their reinsurance obligations on the ground of fraudulent inducement by reason of Union Indemnity's failure to disclose its insolvency. In support of their motion, they sub-

mitted the affidavits of the Liquidator's outside counsel in the Hall action, but no other evidence, arguing that the affidavits constituted judicial admissions as to the fraudulent scheme.

In opposition, the Liquidator submitted affidavits which had been submitted in the Hall action in which Union Indemnity's former president and its former board chairman stated that Union Indemnity was operated as an independent insurance company separate from Hall and from Union Indemnity's former auditor who stated that the transactions between Hall and Union Indemnity were normal within the insurance industry. On the basis of these three affidavits, the Liquidator argued that the statements made in the affidavits of outside counsel could not have been conclusive admissions because they were contradicted by these statements also submitted by the Liquidator in the same action. Moreover, it was asserted, neither of the affidavits purported to be based upon firsthand knowledge inasmuch as both expressly stated that they relied upon documents and both merely restated the allegations in the Hall complaint. Neither, it was urged, was intended to support a motion for summary judgment.

By decision dated October 16, 1989, but entered three years later on November 16, 1992, the liquidation court granted the reinsurers' motion and rescinded the insurance, finding the statements in the affidavits to be informal judicial admissions. In a second decision dated November 14, 1989, but also entered November 16, 1992, the decision was amended to add another reinsurer to those entitled to relief.

The Liquidator and Michigan then moved to renew and reargue, on the grounds that (1) the court erred in its application of the doctrine of informal judicial admissions and that, (2) the remedy of rescission was prohibited under the exclusive provisions of New York's liquidation scheme and violated public policy in that it effectively granted a prohibited preference to the reinsurers at the expense of Union Indemnity's policyholders.

Upon reargument, the court, in a third order entered November 16, 1992, adhered to its earlier determination with respect to the informal judicial admissions and the resulting finding of fraud by Union Indemnity, but modified its prior decision, finding that the reinsurers' counterclaim for rescission constituted a claim for affirmative relief which was barred by the order of liquidation, but upheld their defense of fraud in the inducement.

■ We agree with the liquidation court that the admissions made by counsel for the Liquidator in the Hall action constitute informal judicial admissions and, as such, are admissible against the Liquidator in this action as if they were made by the Liquidator himself, inasmuch as they are insufficiently explained or controverted and thus establish, as the court found, "that material omissions, as well as misrepresentations, occurred, that Union officers and directors were aware of the operations and financial condition of the company and that a conscious plan was in operation to utilize Union for Hall's purposes and not run the corporation as an independent entity, as required by the Insurance Law Section 1507 and 1505." As noted by the court, it is conceded that had the reinsurers been aware of Union Indemnity's insolvency, they would not have underwritten reinsurance for it, particularly in light of the greater responsibility imposed on reinsurers by Insurance Law § 1308 in the event the ceding insurer is liquidated, whereby the reinsurer must pay the Liquidator on reinsured claims even if the Liquidator has not yet paid the policyholder.

■ We also agree with the court's reasoning in dismissing the reinsurers' counterclaims against the Liquidator, while sustaining their affirmative defense of fraud in the inducement against him inasmuch as the counterclaim for rescission based upon Union Indemnity's fraud constituted a claim for affirmative relief which is barred by the injunction contained in the July 16, 1985 order liquidating Union Indemnity, which, pursuant to Insurance Law § 7419, prohibited any action against the insolvent estate in the person of the Liquidator.

■ The court correctly upheld the reinsurers' defense of fraud, however, rejecting the Liquidator's argument that to do so would contravene the public policy underlying the liquidation statute (Insurance Law art 74). Relying upon language in *Matter of Midland Ins. Co.* (79 NY2d 253, 264-265, *affg* 167 AD2d 75) to the effect that "liquidation cannot place the liquidator in a better position than the insolvent company he takes over, authorizing him to demand that which the company would not have been entitled to prior to liquidation [citations omitted]", and likening this action to the situation of setoffs, the court reasoned that the object of the defense is not to create a preference on behalf of the reinsurers, but to insulate the reinsurers from liability in the first instance, there being no asset of Union Indemnity's to be turned over to

the Liquidator since there was no liability on the part of the reinsurers from the start.

As noted by the court, the gist of the Liquidator's public policy argument has already been rejected in *Matter of Midland Ins. Co. (supra,* at 262), where it was observed, with respect to the right of offset set forth in Insurance Law § 7427 (a), that: "Although permitting offsets may conflict with the statutory purpose of providing for the pro rata distribution of the insolvent's estate to creditors, the Legislature has resolved the competing concerns and recognized offsets as a species of lawful preference. Indeed, if an offset is otherwise valid, there would seem to be no reason why its allowance should be considered a preference: it is 'only the balance, if any, after the set-off is deducted which can justly be held to form part of the assets of the insolvent' *(Scott v Armstrong,* 146 US 499, 510)".

The Court of Appeals went on to note in connection with the set-off claim asserted by the reinsurer in that case that: "Moreover, liquidation cannot place the liquidator in a better position than the insolvent company he takes over, authorizing him to demand that which the company would not have been entitled to prior to liquidation *(see, Bohlinger v Zanger,* 306 NY 228, 234; *see also,* 2A Couch, Insurance 2d §§ 22:48, 22:50 [rev ed]). * * * [Preliquidation rights of offset] were not altered merely because a liquidation order was entered. To hold that they were would be to render portions of the statute meaningless by prohibiting offset of all preliquidation debts between an insolvent insurer and reinsurer arising out of a reinsurance contract, despite the fact that section 7427 of the Insurance Law applies to liquidation proceedings." *(Supra,* at 264-265.)

Here, as the reinsurers correctly maintain, their claim of fraud in the inducement created rights at the time the treaties were entered into, prior to Union Indemnity's liquidation. Those rights were not altered by the liquidation, and the amounts sought never became assets of the insolvent estate (thereby distinguishing this case from the bank and security firm insolvency cases *[Continental Assur. Co. v American Bankshares Corp.,* 540 F Supp 54; *Scott v Deweese,* 181 US 202; *Downriver Community Fed. Credit Union v Penn Sq. Bank,* 879 F2d 754, *cert denied* 493 US 1070; *Hurd v Kelly,* 78 NY 588; *Matter of Weis Sec.,* 605 F2d 590, *cert denied sub nom. Grossman v Redington,* 439 US 1128] also referred to and distinguished by the liquidation court, which involved contri-

butions of assets to a bankrupt corporation which are relied upon by other creditors).

While *Midland* involved an interpretation of the statutory defense of setoff (Insurance Law § 7427), as opposed to the common-law defense of fraud, that decision should be extended to apply to the situation at bar in light of the policy of preserving preliquidation rights inasmuch as the defense of fraud in the inducement and the equitable rescission of a contract due to fraud are declarations that the contract was void *ab initio (see, Stephens v American Home Assur. Co.,* 811 F Supp 937, 946-948 [SD NY 1993], citing *Christiana Gen. Ins. Corp. v Great Am. Ins. Co.,* 979 F2d 268, 278; *Eastern Dist. Piece Dye Works v Travelers Ins. Co.,* 234 NY 441, and reaching the same conclusion as we do now, relying, *inter alia,* upon the liquidation court's decision in this case).

"The relationship between a reinsurer and a reinsured is one of utmost good faith, requiring the reinsured to disclose to the reinsurer all facts that materially affect the risk of which it is aware and of which the reinsurer itself has no reason to be aware. * * *

"A fact is material so as to avoid *ab initio* an insurance contract if, had it been revealed, the insurer or reinsurer would either not have issued the policy or would have only at a higher premium." *(Christiana Gen. Ins. Corp. v Great Am. Ins. Co., supra,* at 278.)

While materiality must be assessed as of the time the contract was entered into and is ordinarily a question of fact, where the evidence of the materiality of a misrepresentation is clear and substantially uncontradicted, the matter is one of law for the court to determine *(Mutual Benefit Life Ins. Co. v Schwartz,* 170 AD2d 359; *Process Plants Corp. v Beneficial Natl. Life Ins. Co.,* 53 AD2d 214, 216-217, *affd on opn below* 42 NY2d 928). As noted above, materiality is conceded here.

Finally, although the intervening rights of the policyholders may be affected, it is well established that, a contract of reinsurance being one between the reinsurer and the insurer/reinsured, absent language in the policy indicating the reinsurer's intent to be directly liable to the insured, the reinsurer has no obligation to the original insured, which cannot claim the status of a third-party beneficiary of the reinsurance contract *(Mercantile & Gen. Reins. Co. v Spanno Corp.,* 151 Misc 2d 311, 312-313, *revd on other grounds sub nom. Mercantile & Gen. Reins. Co. v Colonial Assur. Co.,* 184 AD2d 177,

*revd on other grounds* 82 NY2d 248; *Turner Constr. Co. v Seaboard Sur. Co.,* 85 AD2d 325, 327; *Greenman v General Reins. Corp.,* 237 App Div 648, *affd* 262 NY 701).

◾ As to Michigan's appeals from the foregoing orders and from the court's order of October 27, 1987, which, *inter alia,* denied its cross motion for summary judgment to dismiss, with prejudice, the Liquidator's counterclaim, cross claim and third-party complaint dated January 14, 1986, without prejudice to renewal after trial of defendants reinsurers' affirmative defense of fraud in the inducement, all of the orders inasmuch as they pertain to Michigan should also be affirmed.

While we agree with Michigan that by virtue of Insurance Law § 4118 (a) (1) (A) and the terms of the various reinsurance treaties, it has the right to maintain direct actions against most, if not all, of the reinsurers *(see, Turner Constr. Co. v Seaboard Sur. Co., supra,* 85 AD2d 325), nevertheless, inasmuch as the reinsurance treaties relied upon have been found to be void *ab initio* as the result of Union Indemnity's fraud, Michigan, as an insured stands in no better position than its now defunct insurer Union Indemnity. As noted earlier, absent provisions to the contrary, the original insured cannot claim the status of a third-party beneficiary of a reinsurance contract *(see, Turner Constr. Co. v Seaboard Sur. Co., supra,* at 327; *Mercantile & Gen. Reins. Co. v Spanno Corp.,* 151 Misc 2d, *supra,* at 312-313). Moreover, even if Michigan could claim such status pursuant to the Insurance Law and the terms of the reinsurance treaties, any direct liability of the reinsurers to a suit by the original insured would be pursuant to the contract of reinsurance *(see, Mercantile & Gen. Reins. Co. v Spanno Corp., supra,* at 313). It is fundamental, however, that the essential foundation of any right of action a third-party beneficiary may have is a valid and binding contract *(see,* 2 Williston, Contracts § 364A, at 873 [3d ed]) and, "if a contract is voidable or unenforceable at the time of its formation the right of any beneficiary is subject to the infirmity." (Restatement [Second] of Contracts § 309 [1].) Thus, the reinsurers' defense of fraud may properly be asserted against Michigan *(id.,* comment *a)* and its claim against the reinsurers was properly dismissed.

### Appeal Nos. 50536-50538

Accordingly, the three orders of the Supreme Court, New York County (Ira Gammerman, J.), entered in these consoli-

dated actions on November 16, 1992, which (1) *inter alia,* granted the motions of defendants reinsurers on their affirmative defense of fraud in the inducement and on their counterclaims and directed rescission of their reinsurance treaties with the now insolvent insurer Union Indemnity, severed the claims of five reinsurers who did not join in the motion and dismissed the claims of the plaintiff Michigan and the third-party plaintiff-intervenor Liquidator against the moving reinsurers; (2) modified said order so as to extend the foregoing relief to defendant Aneco Reinsurance Underwriting; (3) granted the motion of the Liquidator and Michigan for reconsideration and, upon reconsideration, modified the original order only to the extent of dismissing the reinsurers' counterclaims for rescission, extended the relief regarding the affirmative defense of fraud to defendant Hannover Ruck Versicherungsag, and otherwise adhered to the court's prior determination, should be affirmed, without costs.

## Appeal No. 50535

The order of the same court, entered November 19, 1987, which, *inter alia,* denied the cross motion of plaintiff Michigan National Bank-Oakland for summary judgment, without prejudice to renewal after trial of defendants reinsurers' affirmative defense of fraud in the inducement, should also be affirmed, without costs.

ELLERIN, J. P., RUBIN and NARDELLI, JJ., concur.

Order, Supreme Court, New York County, entered November 19, 1987, and three orders, same court and Justice, entered November 16, 1992, affirmed, without costs.